1                 IN THE UNITED STATES DISTRICT COURT

2                     FOR THE DISTRICT OF OREGON

3                         PORTLAND DIVISION

4
   TRIPWIRE, INC.,                    )
5                                     )
                         Plaintiff,   )  Case No. 3:17-cv-00114-YY
6                                     )
                  v.                  )
7                                     )  October 16, 2017
   UPGUARD, INC., NORMAN ZULAUF,      )
8  THOMAS LYNN, ANDREW                )
   STEIGLEDER, MICHAEL LOHR, and      )
9  ANTHONY ESPOSITO,                  )
                                      )
10                       Defendants.  )  Portland, Oregon
   _____)
11

12

13

14                  TELEPHONIC ORAL ARGUMENT

15                  TRANSCRIPT OF PROCEEDINGS

16          BEFORE THE HONORABLE YOULEE YIM YOU

17      UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

```
1                          TELEPHONIC APPEARANCES

2   FOR THE PLAINTIFF:
                            KRISTIN L. CLEVELAND
3                           Klarquist & Sparkman, LLP
                            One World Trade Center
4                           121 SW Salmon Street
                            Suite 1600
5                           Portland, OR 97204

6   FOR THE PLAINTIFF:
                            SALUMEH R. LOESCH
7                           Klarquist & Sparkman, LLP
                            One World Trade Center
8                           121 SW Salmon Street
                            Suite 1600
9                           Portland, OR 97204

10  FOR THE DEFENDANT(S):
                            DARREN E. DONNELLY
11                          Fenwick & West LLP
                            801 California Street
12                          Mountain View, CA 94041

13  FOR THE DEFENDANT(S):

14                          MICHAEL J. SACKSTEDER
                            Fenwick & West LLP
15                          555 California Street
                            Floor 12
16                          San Francisco, CA 94104

17  FOR THE DEFENDANT(S):
                            TODD R. GREGORIAN
18                          Fenwick & West LLP
                            555 California Street
19                          Floor 12
                            San Francisco, CA 94104
20

21  FOR THE DEFENDANT(S):

22                          KRISTIN MICHELLE MALONE
                            Markowitz Herbold PC
23                          1211 SW 5th Avenue
                            Suite 3000
24                          Portland, OR 97204

25
```

```
1   COURT REPORTER:        Jill L. Jessup, CSR, RMR, RDR, CRR, CRC
                           United States District Courthouse
2                          1000 SW Third Avenue, Room 301
                           Portland, OR 97204
3                          (503)326-8191

4

5                                   *    *    *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    TRANSCRIPT OF PROCEEDINGS

 2                   (Telephonic Oral Argument.)

 3           THE COURT:  Good afternoon, Counsel.  We're on the

 4     record in Tripwire v. UpGuard.  It's Case No. 17-cv-114.

 5     Counsel, please state your appearances for the record, starting

 6     with plaintiff's counsel.

 7           MS. CLEVELAND:  Good afternoon, Your Honor, this is

 8     Kristin Cleveland, for plaintiffs, of Klarquist Sparkman.

 9           MS. LOESCH:  And this is Salumeh Loesch, also for

10     plaintiff, also from Klarquist Sparkman.

11           THE COURT:  And for the defense?

12           MR. SACKSTEDER:  Good afternoon, Your Honor.

13     Michael Sacksteder from Fenwick & West on behalf of UpGuard and

14     the individual defendants, and I also have Darren Donnelly of

15     Fenwick & West and Todd Gregorian of Fenwick & West on the

16     line.

17           MS. MALONE:  This is Kristin Malone of Markowitz

18     Herbold.

19           THE COURT:  All right.  And just to reiterate, we're

20     on the record, which means we have a court reporter; so if

21     everyone could remember to speak at a reasonable pace and also

22     identify yourself before you state anything, I know that our

23     court reporter would appreciate that.

24         So we're here because there are two disputes between the

25     parties that they would like the Court's help with.  The first
```

1   is related to Tripwire's trade secret claims and the second has

2   to do with an objection under local Rule 33-1(d).  I would like

3   to thank the parties for their very helpful submissions.

4   First, the email that outlines what the issue generally is.

5   There are two motions.  Plaintiff's motion to compel,

6   defendants' motion to compel, as well as a memo regarding the

7   Rule 33 issue, and along with that, too, you provided exhibits

8   both in hard copy and on disk.  I want to make sure that I'm

9   not missing anything.

10          MS. LOESCH:  That's all we submitted, yeah.

11          THE COURT REPORTER:  Who is speaking?

12          DEPUTY COURTROOM CLERK:  Who is speaking?

13          THE COURT:  That is Ms. Loesch.

14      I want to say again that these materials were

15   extraordinarily helpful and really provided me with what I

16   think I need in order to resolve this dispute.

17      So let me ask -- to start, let's begin by talking about

18   what you identified as the first issue which has to do with

19   Tripwire's trade secret claim.  And as I understand the issue,

20   the defense would like for Tripwire to provide more specifics,

21   and Tripwire's contention is that it's provided enough

22   specifics.  So I think that just very broadly outlines what the

23   issues are; correct?

24          MR. GREGORIAN:  That's correct, Your Honor.  This is

25   Todd Gregorian.

1          MS. LOESCH:  Salumeh Loesch on behalf of Tripwire.

2      That's correct, and I would like to add that part of our

3  claim is twofold.  One is that we've provided sufficient

4  particularity; but even if we haven't, there's no stay of all

5  discovery -- there should be no stay of all discovery, and we

6  believe they're separate issues.

7          THE COURT:  Okay.  So let's talk about -- let's begin

8  with how it is that Tripwire believes it's identified the trade

9  secrets with reasonable particularity.  So you provided a lot

10 of material.  Can you point to where in the materials you've

11 identified the trade secrets with reasonable particularity?

12     And I also want to note, of course, that there are --

13 there's information contained in the exhibits that's for

14 counsel's eyes only.  We're on the record.  The hearing is not

15 yet under seal.  If you just want to identify the page numbers,

16 that's -- that's really what I need.

17         MS. LOESCH:  Okay.  So if you turn to our

18 Exhibit H -- it is in response to defendants' second set of

19 interrogatories, and in there we identify -- we describe and

20 identify our trade secrets and all the facts that support that,

21 that we haven't gotten any discovery from -- from defendants.

22     So 18 pages, excluding our objections, detailing the

23 misappropriated trade secrets, and in there we identify

24 customer lists, confidential customer information, customer

25 acquisition, renewal schedule information, pricing information,

1    competitive market research information, practical advanced

2    information, technical partner integration information, and

3    other confidential information about Tripwire's employees.  And

4    that's all detailed in Exhibit H.

5         Further, in -- I think it's Exhibit G.  We also identify

6    the 11 -- we identify specifically 11 customers that were --

7    that we -- Tripwire contends were Tripwire customers that the

8    defendants approached, and Tripwire lost sales as a result of

9    that, and --

10        THE COURT REPORTER:  I'm sorry.  I didn't hear what

11   you just said.  You're kind of muffled.  The very end, the last

12   sentence.

13        MS. LOESCH:  In Exhibit G we identify the 11 name --

14   the 11 customers whom Tripwire contends that the defendants

15   approached and are Tripwire customers and that some of whom are

16   no longer Tripwire customers and are UpGuard customers and that

17   because defense approached these customers, used Tripwire's

18   proprietary trade secret information, and, as a result,

19   Tripwire has lost sales.  And these are Exhibit G on pages 12,

20   14 through 16, 18 through 19, and 21.

21        THE COURT:  Okay.  I just wanted to clarify about

22   that.

23        So you've provided -- you've provided a significant amount

24   of briefing on these issues, along with case law, some of which

25   I've had a chance to look at.  So I don't -- I don't really

1   need a rehash of the arguments that you've made; but let me

2   ask, since we've started with plaintiff, if there's anything in

3   particular you would like to highlight with respect to the

4   issue presented here?

5          MS. LOESCH:  Yes.  Thank you so much.  This is again

6   Salumeh Loesch.  And the main thing we want to point to here is

7   that we served our discovery requests over five months ago, so

8   we served the discovery requests in the spring.  Summer is

9   over.  We're in fall now.  We still have basically received no

10  discovery from defendants.

11     The defendants' statements in their brief about that they

12  are pushing discovery forward on the patent issues is very

13  misleading.  The courts -- the parties agreed and the Court

14  ordered certain patent disclosures that included,

15  quote/unquote, inspection, carved-out production, and UpGuard's

16  technical document production.

17     The fact is UpGuard has produced only 28 nonpublic

18  documents.  So in my -- outside of source code-related

19  documents and publicly available web pages and prior art, to me

20  that is not pushing discovery forward in a case that alleges

21  patent -- has two counts of patent infringement, trade secret

22  misappropriation claims, intentional contract -- contractural

23  claims, breach of contract claims, 28 nonpublic documents

24  outside of source code production, and source code-related

25  documents, and publicly available documents, is not pushing

1   discovery forward.

2       And defendants' brief is just filled with misstatements

3   and --

4          THE COURT:  Let me just ask, Counsel, if you could

5   slow down just a tad.

6          MS. LOESCH:  Okay.  Sorry.  The other -- there are

7   many misstatements in defendants' brief, and I think that

8   is the most compelling argument in Tripwire's favor.  I mean,

9   defendants' claim that this district requires reasonable

10  particularity; whereas, all four cases in this district on this

11  issue expressly state that they do not require reasonable

12  particularity and it's based on the facts of the case.

13      And the Court in *Vesta Corp* specifically said that neither

14  of Judge Simon's opinions adopted the rule applied by other

15  districts requiring the party alleging the claim for

16  misappropriation of trade secrets, identify the trade secrets

17  with reasonable particularity before compelling discovery among

18  adversary trade secrets.  And that's at page 1153 of the *Vesta*

19  *Corp* case.

20      That's just one of the many examples where defendants

21  claim there's a nationwide -- quote/unquote, nationwide

22  practice that trade secret plaintiff may not seek discovery on

23  this claim until it's identified as trade secrets.

24      The cases that defendants cite in support of these

25  positions, first of all, are outside this district; and,

1    secondly, are not even on point.  These cases discuss the

2    California statute and its -- the state statute's admissibility

3    in federal court.  They don't even go to the issue that we're

4    discussing here.

5        Some of it there, for example, in a job science issue was

6    related to an amended complaint, and then even there the Court

7    said that -- the Court didn't even -- the Court didn't even

8    address the issue of the trade secret identification.

9        In their -- in the *Switch* case that defendants -- that we

10   explained in our brief, in that case, the defendants actually

11   produced substantial documents.  They searched for emails.

12   They did their document production.  And so the cases the

13   defendant cites, positions they take in their brief, are not

14   applicable here or misstate the law as is applied here in

15   Oregon, and I think that is really important for the Court

16   to -- to know and to appreciate.

17       And the other main point that we want to -- that Tripwire

18   wants to address is that there are, like I said before, two

19   clear -- two points here.  One is the defendants do not have a

20   right to stay all discovery, and they -- defendants have not

21   pointed to really any discovery request here that are seeking

22   disclosure for -- of UpGuard's, the defendants', proprietary

23   trade secret information.

24       Tripwire is asking for information related to Tripwire's

25   own trade secrets, and that is wholly appropriate.  That is

1   unrelated to -- to UpGuard's trade secret and just -- and

2   UpGuard's objection, defendants' objection here, is not

3   relevant in the context of discovery requests, are not seeking

4   defendants' trade secrets.

5            THE COURT:  Okay.  All right.  Thank you, Counsel.

6      So having given plaintiffs an opportunity to highlight

7   particular issues, let's move to the defense and UpGuard's

8   counsel.

9            MR. GREGORIAN:  Sure, Your Honor.  This is

10  Todd Gregorian.  I guess I'll start by addressing some of the

11  points that plaintiff raised.

12     First, with respect to whether discovery is progressing on

13  the patent claims, we provided at least three days of source

14  code review, and I believe a fourth was scheduled for last week

15  and provided a 30(b)(6) witness about the operation of our

16  products.  So in a patent case, there's no discovery that is

17  more fundamental, and there's little discovery in addition to

18  that that is going to determine any issue about infringement.

19     So, you know, we've stalled on these non-patent issues,

20  but I think the parties acted in good faith to move things

21  along.

22     Second, with respect to the reasonable particularity

23  standard, whether or not the cases in Oregon have adopted a

24  rule like, you know, California has a statute.  That's sort of

25  beside the point.  The cases apply a reasonable particularity

1    standard, *Vesta*, in particular, does.  That also recognizes the

2    nationwide consensus that we pointed to.

3        And then, third, the reason for a trade secret

4    identification requirement doesn't track expressly to request

5    that -- ask for the defendants' confidential information.  That

6    is one among the three or four rationals for the identification

7    requirement.

8        And, furthermore, the requests at issue here do expressly

9    call for UpGuard confidential information as they go to

10   internal communications between UpGuard and the individual

11   defendants.

12       Taking a step back, so the points I would like to

13   highlight are -- there's an issue here -- there's two issues,

14   from our perspective, as well.  One is what is the -- whether

15   we can get the information about the claims that plaintiffs

16   have brought against us; and, second, what must they do to make

17   it over the gate to get affirmative discovery on that claim?

18       On the first issue, I think Your Honor -- Your Honor's

19   first question was getting at that.  In their disclosure,

20   they've given us five general categories of information that

21   the cases are clear are insufficient to describe specific

22   secrets.  Both *Vesta* and *Dura Global*, cited in our papers, say

23   that.

24       And then, second, they've given us documentary examples,

25   which is also insufficient because they may or may not be the

1    secrets at issue in the case.

2        Last point I would make about their disclosure is it's

3    unverified, so we don't even know what witness to depose about

4    this.

5        On the second issue, this case sort of presents the exact

6    scenario of why an identification requirement is imposed.  It

7    is not based on facts, like the *St. Jude* case, where there

8    are -- where there's a record of misappropriation and it is

9    just -- discovery is just a matter of confirming what was taken

10   and what was used.

11       Here the facts are UpGuard hired some sales employees from

12   Tripwire.  They had limited success in winning some customers,

13   and that is essentially it.  The -- you just can't get trade

14   secrets discovery on that basis.

15       The whole point of the requirement is that you can't come

16   in without specific information about misappropriation and wade

17   through the files.

18       I'm happy to address any further concerns that Your Honor

19   has.

20           THE COURT:  Just a moment.

21       Can you describe why, in your view, the case is

22   distinguishable from *St. Jude*?  You've touched on that, but can

23   you explain further?

24           MR. GREGORIAN:  Sure.  So in the run of these cases

25   that allow an exception to the identification requirement,

1    stereotypical fact pattern is someone working at the behest of

2    a competitor or desired competitor, you know, breaks into this

3    office facility in the middle of the night and makes off with

4    unspecified files.  *St. Jude* is a bit of an outlier in that it

5    applies -- it allows discovery to proceed, in essence, of those

6    sort of facts.  But what it does have are -- is direct evidence

7    of misappropriation and a scope of discovery that's defined by

8    what was already shown; namely, the defendant in that case had

9    taken a 500-page internal strategy presentation that she was

10   involved in and had also taken 41 full thumb drives of

11   information from the plaintiff.

12       So not only was there sort of a prima facie case of

13   misappropriation shown, but discovery was essentially set.

14   It's what -- the questions are "What are on those thumb drives

15   and what in the presentation qualifies for trade secret

16   protection?"

17       Here we have none of that.  We have nine general

18   categories of information, only two of which they've even said

19   are at issue here or that they even have -- information

20   suggesting that that information was misappropriated, and we

21   don't know what that information is.  So they haven't

22   disclosed, in response to our request, even the information

23   about their claims that they have in their current possession.

24            THE COURT:  So I understand the argument that you're

25   making, but in *St. Jude*, perhaps there was -- in *St. Jude* it

1  was known what materials were taken.  Isn't Tripwire, in this

2  case, trying to ascertain what trade secrets were taken, what

3  information was taken?  I mean, it's convenient if you happen

4  to know; but if you don't know, then how -- how else is

5  Tripwire to try to obtain that information other than asking

6  UpGuard to provide it to them?

7           MR. GREGORIAN:  Sure.

8           THE COURT:  There must -- there must be situations

9  like this where you don't know what information has been taken.

10  It's kind of convenient in *St. Jude* that they happened to know.

11           MR. GREGORIAN:  Right.  So the point, though, is that

12  they're in no different position than the normal trade secret

13  plaintiff, which is they've -- they have some -- well, they're

14  relying on the fact that employees have gone from one company

15  to another and sold products to their former customers.  But

16  they're the ones that brought the claim.  They need to come

17  forward and say what that claim is about before they get into

18  discovery.

19           THE COURT:  Well, how will they know unless they

20  obtain it from your client?  I'm having a hard time

21  understanding that.

22           MR. GREGORIAN:  Sure.  So -- well, reason one is

23  because they needed a basis to bring the claim.  So they need

24  to -- they need to say what that basis is.  If that basis is,

25  you know, we conducted forensic examination, and it shows that

these guys left with files, that is one way.  If we -- if it's

that they spoke to customers and the customer said this

confidential information of yours was shared in a meeting once

they left and went to defendant, that's another way.

But the whole point of an identification requirement is

that you can't get into affirmative discovery without

disclosing some sort of basis to bring the claim.

THE COURT:  Well, they have, though.  They've

disclosed -- they've disclosed a lot of underlying facts, a

number of different customers.  I can't get into all the

details that are contained in these exhibits, but some of it is

outlined in the complaint.

So I -- I guess I'm still unclear as to why they

haven't -- they have -- I mean, certainly they've made a good

faith showing.  I guess the question is ultimately how are they

to ascertain the scope of what was taken without obtaining that

information from UpGuard?

MR. GREGORIAN:  Right.  So I guess the point is not

that they have to be able to prove up -- prove up

misappropriation and all its details before they can even take

discovery; but they are in the position of being able to

identify the things that they claim as trade secrets, the

things they claim the defendants had access to, and to define

the scope of their claims.

If the -- you know, if the allegation is that the

1    defendants took everything that they had access to, they could

2    easily disclose that in a trade secret identification and we're

3    off into discovery on the broadest possible trade secret claim.

4            THE COURT:  Okay.  Anything further?

5            MR. GREGORIAN:  Well, Your Honor, I would just add

6    that regardless of the sort of timing issue of whether we need

7    to supplement our responses before they respond to our

8    discovery, we really don't know what the basis of their claims

9    are from their responses; and so I'll say specifically that

10   during meet and confer we discussed that they have alleged

11   evidence of misappropriation that's not disclosed in the

12   response, and there's just no reason for that to be held back

13   regardless of how the Court rules on timing.

14           THE COURT:  Okay.  Well, maybe it's a good idea to

15   then move on to the Rule 33 issues.

16       I can start with the defense there.  Anything that you

17   would like to add?

18           MR. GREGORIAN:  Your Honor, I think I -- our papers

19   cover it pretty well.  I think maybe -- maybe two points.

20       The local rule is no longer an -- an objection to the fact

21   that an interrogatory is a contention interrogatory of -- and

22   applying a lot of fact.  The only objection that that local

23   rule supports is an overbreadth objection.  And the two cases

24   we cite, *EEOC* and *Kinnee* both say the key question is whether

25   the interrogatory extends to facts that aren't at issue in the

case.  Basically, the definition of overbreadth.

Our interrogatories are narrowly tailored to facts specifically at issue in the case, facts that form the basis of the claim; namely one of the claims -- one of the facts that Tripwire is going to put forth to argue we're liable, and that's just not overbroad.  We're entitled to know it to form our defense.

A related point is, you know, we -- we have tried to work out a meet and confer.  Even if you don't view this as an overbreadth objection and you view it as, you know, there are magic words required to elicit this information, you know, we've -- we've offered to reframe our interrogatories in our papers four separate ways, and we did want to meet and confer as well and they've rejected that offer.

So there needs to be a way for us to get this information.  We've suggested ways that the case is specifically approved, so we would be happy with either an order that they respond to our interrogatories as phrased or as -- as phrased in each of the alternative suggestions in our papers.

THE COURT:  Okay.  Thanks for the clarification.

Let me move to the plaintiff.  Anything further on the Rule 33 issue?

MS. LOESCH:  This is Salumeh Loesch on behalf of Tripwire.  I just wanted to touch on a couple of the points that the defendants just raised.  One is on the -- I think

Mr. Gregorian said that the -- their requests are fairly
narrow.  I just want to read to you the -- Interrogatory No. 1.
It says, "Describe with specificity all facts that form the
basis of Tripwire's trade secret misappropriation claim against
UpGuard, Zulauf, Lynn, and Steigleder."  Count three of the
complaint.

    I mean, I think, on its face, that is extraordinarily
broad, and there's no -- Tripwire, of course, is not refusing
to respond to interrogatories asking for -- interrogatories
related to the trade secret misappropriation claims and, of
course, as you can see in Exhibit H, responded to
interrogatories that comply with the local rules and that
are -- that, you know, are not objectionable on these grounds.

    And then to address defendants' claims that they provided
alternatives, their alternatives on all facts, each and every
fact, explained fully, that is not -- I mean, the courts
repeatedly found those types of requests to explain each and
every fact, instead of specify all facts that form the basis of
Tripwire's claims -- but they're virtually the exact same
interrogatory.  And it is not, you know, Tripwire's burden to
draft interrogatories for defendants to comply with the local
rules.

    So our content -- our position is that we -- you know,
we've been more than reasonable in allowing Tripwire --
allowing defendants to amend these interrogatories, not count

 1    these towards the total, respond fully and in extensive detail

 2    to the appropriately worded, appropriately crafted

 3    interrogatories.  We just contend that these interrogatories

 4    that we have objected to on a 33-1(d) basis are extraordinarily

 5    broad and verbatim follow what the rules say, is improper here

 6    in Oregon.

 7                THE COURT:  All right.  Thank you.  So then I would

 8    like to address one issue that was raised in plaintiff's motion

 9    to compel, going back to the first issue with respect to trade

10    secrets.  There's some reference in the plaintiff's motion in

11    various places about fees, and it -- it may not come as a

12    surprise to the parties, based on my questioning of defense

13    counsel, that I'm leaning in favor of the plaintiff on this

14    issue; but I would like to talk about the issue of fees because

15    I just want to make it clear, I guess, to both parties that I

16    don't see this as, based on what you've submitted -- like I

17    said, based on what you've submitted, that there is any

18    obstructionistic behavior on the part of the defense.  I see

19    this as a difficult question to answer because both sides seem

20    to legitimately believe that the other side has to make the

21    first move.

22         So I just wanted to -- I just -- before, say,

23    hypothetically, I resolve this in plaintiff's favor, before you

24    rush off and submit some kind of a request for fees, I just

25    want to make sure you're clear as to where I'm coming from on

     1   that.

     2            MS. LOESCH:  Salumeh Loesch on behalf of plaintiff.

     3   I appreciate that position, and of course I think fees awarded,

     4   obviously, are very rare.  The reason why we asked for fees is

     5   because of defendants' complete stall of all discovery.  If the

     6   issue here was, for example -- I'm making these numbers up

     7   because unfortunately I'm not smart enough to remember every

     8   number in every discovery request, but if the issue was

     9   defendants are objecting to request number 5, 25, and 17, or

    10   whatever, because those are asking specifically for defendants'

    11   trade secret information, that is what the dispute is about, we

    12   would never have asked for fees.  That is a legitimate dispute.

    13        However, here defendants have basically stalled all

    14   discovery.  We have asked for, as an example, the email

    15   addresses and accounts of the individual defendants so we can

    16   then do our discovery.  How is that asking for defendants'

    17   proprietary trade secret information?  How is that Tripwire

    18   going on a fishing expedition to further -- to find some sort

    19   of trade secret argument?

    20        I mean, some of these requests, some of the positions the

    21   defendants have taken, they have basically stalled all

    22   discovery.  They have wasted five months of our time.  They

    23   have wasted our client's dollars.  They have -- I mean, because

    24   they have provided effectively absolutely no discovery.

    25        And in any of the cases -- and I think if you just look at

1  the cases cited by defendant, these cases, almost all of them

2  unless they're specifically -- unless the only issue in the

3  case is a trade secret case, unless really -- California

4  statutory -- applying California statute in a very narrow case,

5  there is no case that defendants have cited that give them the

6  right to object to all discovery, and that is our critical

7  issue with what is happening.  It's delayed this case for five

8  months because they've provided virtually nothing.

9         THE COURT:  Well, I'm not going to get into the

10 details with respect to each and every request and the emails,

11 like you said.

12        MS. LOESCH:  Good.

13        THE COURT:  I'm just saying in general, as a general,

14 I guess, observation, when you're looking at the overarching

15 issue here as to who makes the first move, for lack of a better

16 way to put it, I don't find that, when I'm looking at

17 defendants' position, it's entirely unreasonable; so, I mean,

18 it doesn't come as a surprise to me that you're in this, I

19 guess, standoff, as you could call it, because you cannot agree

20 as to who needs to provide more information.

21     And that's what the Court is for, to make that decision,

22 and that is what I'm going to do as quickly as I can so that

23 you can move on to the next step.  Okay?

24     But I just wanted to say that that was my take on it, at

25 least at this point, so I didn't want any of the -- either of

1    the parties to be misled.  Okay?  All right.

2              MS. LOESCH:  Thank you very much.

3              THE COURT:  Anything further for today?

4              MS. CLEVELAND:  Your Honor, on the -- this is

5    Kristin Cleveland for the plaintiff.  We did also have the

6    status conference for the claim construction here --

7              THE COURT:  Oh, right.

8              MS. CLEVELAND:  -- to discuss and then one procedural

9    issue on another date that we can address as well.

10             THE COURT:  You're right.  Absolutely right.  Thanks

11   so much for bringing that up.

12      So, then, on that first question, what are your thoughts?

13             MS. CLEVELAND:  Again, Kristin Cleveland.  So as far

14   as the -- by the first question, do you mean length of the

15   hearing?

16             THE COURT:  Sure.  Or whatever you would like to --

17             MS. CLEVELAND:  So I think that what we are -- I

18   think that I speak on behalf of both parties, to a certain

19   extent, but what we're looking for is what process is going to

20   make Your Honor most comfortable with going through the claim

21   construction process.  The joint status report has set forth

22   the prioritized ten terms that look to resolve many of the

23   issues between us.  We have both also suggested a half day

24   claim construction hearing, and both parties believe that a

25   tutorial would be of assistance in this case.

1        And I think that the issues that we were looking to the

2   Court to -- to determine is both the extent of the briefing and

3   hearing being on the ten terms, and plaintiff's position is

4   that it should be -- that those would be the prioritized terms

5   that are going to avoid getting into perhaps sub terms that

6   even the parties at this point haven't discussed amongst

7   themselves as to what is going to be important on some of

8   the -- I think we have 29 terms in total that were submitted

9   with the brief.

10       And so at least plaintiff's position is that the ten terms

11  briefed in the 30 pages -- the page limits that are discussed

12  in the earlier order is the most appropriate.

13       As far as the tutorial, I think that that is -- that's an

14  issue that the Court can give perhaps a better understanding as

15  to whether you would want that in advance of or on the same day

16  of the claim construction hearing.  In general, a tutorial will

17  give an overview of the technology presented, for example,

18  either by one of the attorneys or by an expert brought in by

19  one of the parties, and both sides would -- would have their 30

20  or 45 minutes, or whatnot, to provide that overall background

21  on the technology so when the hearing process begins and we're

22  talking about minute terms, there's an overall context.

23       And I think both parties think that that would be

24  beneficial for the Court, but look to the Court's guidance as

25  to whether you want that in advance or whether you want that on

1  the same day.

2            THE COURT:  Well, I agree it would be beneficial; so

3  we can -- we can resolve that issue at the outset.

4        What is -- what would be most cost effective?

5            MS. CLEVELAND:  Likely a hearing on the same day

6  would be -- a hearing and tutorial, perhaps like a hearing -- a

7  tutorial from -- you know, scheduled at 10:00 and then the

8  hearing scheduled at 1:30 would probably be the most cost

9  efficient.

10           THE COURT:  And let me ask for the defense.  Do you

11 agree?

12           MR. DONNELLY:  This is Darren Donnelly, Your Honor.

13 I think the answer to your question is probably that the

14 tutorial will be by counsel rather than experts.  I think we

15 would look to the Court on whether or not it's more helpful for

16 the Court to hear the tutorial a day before the hearing and

17 digest it before the hearing.

18      I think that -- that aspect, whether or not it's, you

19 know, the same day or separate days, is fundamentally not a

20 significant driver of cost as opposed to whether or not the

21 tutorial is presented by counsel rather than having to retain

22 an expert and cross-examine the expert and put on direct

23 testimony of the expert.

24           THE COURT:  Well, it looks like, from the documents

25 that you submitted, that you agree that the tutorial can be

1    done by counsel.  That's in the joint claim construction

2    prehearing statement; correct?

3            MR. DONNELLY:  Correct.

4            MS. CLEVELAND:  Your Honor, Kristin Cleveland for the

5    plaintiff.  We would like the flexibility for it to be

6    presented by counsel or by an expert, and of course that would

7    be a cost that we would incur, so -- but we -- we preserved

8    the -- the statement in the joint was -- presentation was by

9    presentation of counsel or experts retained by the parties.

10           THE COURT:  I'm sorry.  I missed that.  Okay.

11           MS. CLEVELAND:  We presented in the joint statement

12   both a possibility of presentation by counsel of record or

13   experts retained by the parties, and we would like to preserve

14   the ability to have an expert in this field making that

15   tutorial presentation to you.  Again, as a presentation format,

16   not as a -- a direct.

17        And there are ways that the parties can exchange

18   presentations slightly in advance and resolve any objections

19   beforehand that would apply to either counsel or expert; so we

20   don't think there's a need for direct/cross regardless of who

21   is giving the presentation.

22           THE COURT:  So let me just be clear.  I'm sorry that

23   I missed that.  I do see that here now.  But neither party

24   intends to offer live testimony at the hearing; right?

25           MR. DONNELLY:  Your Honor, this is Darren Donnelly.

1  UpGuard does not.

2         MS. CLEVELAND:  This is Kristin Cleveland, and

3  Tripwire does not.

4         THE COURT:  Okay.  So, I mean, it's really up to you

5  if you want to bring someone in with greater expertise to

6  present this information.  That's something I can understand

7  you wanting to do.  I mean, that might make sense, depending on

8  what it is you're trying to explain.  So I'll leave that up to

9  you.

10     I guess the question is whether it would be efficient to

11  have the tutorial on a separate day from the hearing, and, I

12  mean, in that regard, I'm flexible.  I would really just like

13  to make sure that it's the most cost effective for the parties.

14     So that's really -- that's really up to you.  I mean, I

15  see that you've provided a lot of information regarding these

16  terms, which I could certainly look at before the tutorial.

17         MS. CLEVELAND:  And --

18         MR. DONNELLY:  Sorry.  I didn't mean to cut you off.

19         MS. CLEVELAND:  Go ahead, Darren.

20         MR. DONNELLY:  This is Darren Donnelly.  I think it

21  would be helpful to -- if the Court is going to keep some

22  flexibility on whether there's going to be an expert

23  presentation or presentation by counsel, I think it would be

24  helpful for the parties to know when that election is going to

25  be made sufficiently in advance or in the nature of things,

1    Your Honor.  Obviously, if one party is going to present by an
2    expert, then probably both parties are going to do it that way.
3        As I said before, in UpGuard's view, that as not the most
4    cost-effective way; but if it's going to be something the Court
5    wants to give the parties flexibility on, it would be helpful
6    for some guidance on when Tripwire is going to make that
7    election.
8            THE COURT:  Let's do this:  Why don't you confer?
9    Perhaps Tripwire can commit as to whether it's going to ask for
10   that presentation to be done -- or not ask, whether Tripwire is
11   going to do that presentation through an expert.  Why don't you
12   confer about that, and then UpGuard can decide whether or not
13   it's also going to provide an expert.  And it could be that
14   that helps to dictate what the schedule is going to be, right,
15   because then you would have additional people you would have to
16   schedule.  And I'll just tell you right now that I'm flexible.
17   You can do it all on the same day.  You can do it on different
18   days if that makes more sense.  I'm flexible as to how much
19   time you think would be necessary for both components.
20       So why don't you confer, see what makes sense for, in your
21   schedule, possibly the expert's schedule, and then reach out to
22   my courtroom deputy, and we can set up -- we can set up a date
23   to accommodate you.
24       Does that sound like a good plan?
25           MR. DONNELLY:  It does for UpGuard, Your Honor.

1      MS. CLEVELAND:  Yes, for plaintiff, as well,

2    Your Honor.

3      THE COURT:  All right.  Was there anything else that

4    we needed to discuss today?

5      MS. CLEVELAND:  Kristin Cleveland again for

6    plaintiff.  So one procedural issue that's kind of part and

7    parcel with the -- the earlier motion.  Right now we have twice

8    or perhaps thrice rescheduled the last day to amend claims to

9    join parties on the non-patent issues.  That date is set out

10   for October 20th because we had anticipated an earlier briefing

11   schedule associated with the papers that went in and that we

12   discussed today.  And that date is obviously unrealistic as far

13   as, you know, even if orders were provided, we wouldn't expect

14   a two-day turnaround in production from the other side.

15       So we were hoping that we could either take that date off

16   calendar and confer, subsequent to the ruling on the motions to

17   compel, as to what an appropriate date would be to put on

18   calendar or just temporarily extend it by two months, or

19   something, so we make sure that we have the time to fully

20   address the discovery issues before that date comes up again.

21       THE COURT:  Certainly.

22       What about the defense?  What is the defense's position on

23   that?

24       MR. DONNELLY:  Your Honor, Darren Donnelly.  I think

25   we have no objection if there's information that Tripwire

1    learns of in discovery for it to have -- that they can give

2    rise to -- some basis to add some additional claim, for it to

3    follow normal rules for making that issues pleading to conform

4    to the evidence that is produced in discovery.

5        The deadline that is out there now is about amendments to

6    its pleading for information it has in its possession

7    currently.

8        So I'm -- I'm -- perhaps I misunderstood what counsel was

9    intending, but we -- we don't object if there's information

10   produced in discovery and Tripwire believes that they need to

11   amend their pleading to bring a new claim in accordance with

12   the federal rules, we have no objection with them doing that.

13           MS. CLEVELAND:   This is Kristin Cleveland again.

14   Your Honor, I think that the -- the issue here is very similar

15   to the issue we briefed.  Last time we had to brief this in

16   opposition to extending this deadline.  I think that the

17   standard that -- what falls into what bucket is strife with

18   future motion practice for a cause that I don't see as -- at

19   the case which has unfortunately put itself into the beginning

20   stages because of where we are in discovery.  I don't think

21   it's unreasonable to move that date in totality and not be

22   introducing this future argument as to whether it was discovery

23   that we knew a little bit about at this point in time or

24   discovery that we got from them when they finally responded to

25   the non-patent issues.  And it's a clean -- it's a cleaner

1   break just because we -- we have the patent issues.  We have

2   the patent issues that are in the past.

3           THE COURT:  I think it makes more sense to set a --

4   to set a date in the future.  Obviously, this October 20th date

5   is not going to work.  I think it makes more sense to actually

6   set a date.

7       So what I would like for you to do is confer and -- we'll

8   strike that date for now, but I would like you to confer and

9   propose a new date.  I'm going to try to get this issue

10  resolved as quickly as I can.  And then you can confer after a

11  ruling is made and then suggest a new date, a jointly proposed

12  date, if you can.

13          MS. CLEVELAND:  Thank you, Your Honor.

14          THE COURT:  Okay.  So then anything else for today?

15          MR. DONNELLY:  Your Honor, this is Darren Donnelly.

16  One thing is -- potentially for today was the issue raised in

17  the parties' joint claim construction submission, and if the

18  Court wants to give guidance on it now of what the parties were

19  thinking, and it's perfectly fine for the Court to give

20  guidance on it later, which is the order of presentation at the

21  claim construction hearing, the two most typical ways are one

22  party presents their views on a particular term, the other

23  party responds, and then the parties respond to any questions

24  the Court has on that term or the arguments and then move to

25  the next term.

1    The other way is one party stands up and presents their

2    argument across all terms and then the other party responds and

3    then addresses any questions by the Court during their

4    presentation or after or whatever the Court thinks are useful.

5    So we have -- we had noted that in our joint claim

6    construction to see if there's a view or a preference from the

7    Court.  That was the only other thing that was potentially on

8    the agenda for today, but we can obviously be prepared to

9    address any way which is convenient for the Court at the

10   hearing.

11           THE COURT:  Well, I appreciate your asking about

12   that, what would be helpful for me, but let me ask what do you

13   think makes sense?

14           MR. DONNELLY:  Your Honor, this is Darren Donnelly.

15   We think probably it makes more sense for the parties to

16   address term by term and entertain any questions that the Court

17   would have of each term.

18           THE COURT:  I agree.

19       Ms. Cleveland, do you want to weigh in?

20           MS. CLEVELAND:  Yes, Your Honor.  Obviously, this is

21   Kristin Cleveland.  The term by term, I think, might be a

22   little bit difficult.  We -- we proposed in the joint report

23   having plaintiff present first as far as what we envisioned,

24   and perhaps it's not clear from us, is that we would be going

25   through a presentation of all the terms and -- but there would

1    be points in time where the Court might ask on a particular

2    issue for the feedback of the other party, which is why in the

3    joint report we mentioned a timekeeping mechanism that we would

4    work out amongst ourselves to deal with that because that is

5    very common.

6        The difficulty that we would have with term by term here

7    is that some of the terms probably should be best considered in

8    groups.  We have, for example, term number one is nodes, term

9    number two is plurality of heterogeneous nodes, and the -- so

10   addressing them on a term-by-term basis, I think, would cause a

11   little bit of confusion.

12            THE COURT:  Couldn't we do, though -- I mean, we

13   could address them in groups.  I mean, I can see why -- I mean,

14   it makes total sense to me that many of these terms would be

15   related and you would want to address them in groups.

16            MS. CLEVELAND:  That would be fine with -- with us.

17            THE COURT:  So let's do that, then, because I think

18   this would be easier for me to retain the information if we

19   address them term by term or in groups and then moved on to

20   other terms or groups that were unrelated.

21            MS. CLEVELAND:  This is Kristin Cleveland again.  I

22   think that counsel can confer and come to an agreed grouping

23   system before the hearing and provide that information.

24            THE COURT:  Okay.  Going back to Mr. Donnelly, does

25   that sound agreeable?

1        MR. DONNELLY:  Of course, Your Honor.  And one -- one

2   other way in which we have often seen some courts want to

3   address the grouping is not have the parties produce it, but

4   the Court figures out from the briefing what issues it wants

5   the parties to argue first.  If the Court wants to proceed that

6   way, we'll obviously be prepared to argue whatever issues or

7   groups of issues that the Court wants to hear and in the order

8   the Court wants.

9        THE COURT:  Well, I have no doubt that I'm going to

10  have some questions or need some clarification regarding these

11  terms and the information that is going to be presented, but I

12  don't assume to have any knowledge as to what makes the most

13  sense in terms of groupings of these terms; so I'm going to

14  leave that to you, and you can figure out the most logical way

15  of presenting the information.  Okay?

16       MR. DONNELLY:  Thank you, Your Honor.

17       THE COURT:  All right, then.  Okay.  Well, thanks so

18  much.  Again, thanks so much for the briefing and the exhibits.

19  They were very, very helpful.

20    All right.  So I assume that that concludes matters for

21  today?

22       MS. CLEVELAND:  That's all for plaintiff, Your Honor.

23  Thank you.

24       THE COURT:  All right, then.  Have a good afternoon.

25  Thanks to both parties.

1            MR. DONNELLY:  Have a good afternoon, Your Honor.

2            THE COURT:  Thank you.

3                      (Hearing concluded.)

1                  C E R T I F I C A T E

2           Tripwire, Inc., v. UpGuard, Inc.

3                    3:17-cv-00114-YY

4              TELEPHONIC ORAL ARGUMENT

5                   October 16, 2017

6

7        I certify, by signing below, that the foregoing is a true

8   and correct transcript, to the best of my ability, of the

9   telephonic oral argument heard via conference call, taken by

10  stenographic means.  Due to the telephonic connection, parties

11  appearing via speakerphone or cell phone, speakers overlapping

12  when speaking, speakers not identifying themselves before they

13  speak, fast speakers, the speaker's failure to enunciate,

14  and/or other technical difficulties that occur during

15  telephonic proceedings, this certification is limited by the

16  above-mentioned reasons and any technological difficulties of

17  such proceedings occurring over the speakerphone at the United

18  States District Court of Oregon in the above-entitled cause.

19  A transcript without an original signature, conformed

20  signature, or digitally signed signature is not certified.

21

22  /s/Jill L. Jessup, CSR, RMR, RDR, CRR, CRC

23  _____

    Official Court Reporter       Signature Date: 10/24/17
24  Oregon CSR No. 98-0346         CSR Expiration Date:  9/30/20

25